RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _6, 9, 08_
G8

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JOSEPH B. WILLIAMS, JR.            CIVIL DOCKET NO. 06-1982

VERSUS                            JUDGE HAIK

SIMS INDUSTRIES, L.L.C.,
ELEVATING BOATS, L.L.C.
and EPL OF LOUISIANA, L.L.C.       MAGISTRATE C. MICHAEL HILL

*************************************************************************
### REASONS FOR JUDGMENT
**A.    Facts**

Plaintiff, an employee of Sims Industries, L.L.C., filed suit against the Defendants in the above-captioned matter for injuries allegedly sustained as a result of a battery box explosion. Energy Partners, Ltd. ("Energy Partners"), EPL of Louisiana, L.L.C. ("EPL") and Elevating Boats, L.L.C. ("EBI") (collectively "Movers") have asserted a Cross-Claim against Sims Industries, L.L.C. ("Sims") and its insurer, third-party defendant Alea London, Ltd. ("Alea") (hereinafter "Defendants") pursuant to the defense, indemnity and insurance obligations allegedly assumed by Sims in Master Service Contract No. 215 (the "MSC") between Energy Partners and Sims. Movers have filed the instant Motion for Summary Judgment (Doc. 43) alleging that no genuine issue of material fact exists regarding Movers' claims for contractual defense, indemnity and additional insured status against Sims and Alea.

**B.    Movers' Contentions (Energy Partners, EPL and EBI)**

Movers contend that the Energy Partners/Sims contract is a maritime contract, as shown

-1-

by the facts surrounding the contract through application of the specific *Davis* factors. *Davis &
Sons, Inc. v. Gulf Oil Corp.*, 919 F. 2d 313, 315 (5th Cir. 1990). The *Davis* Court identified six
factors to examine in interpreting whether a contract is maritime in nature:

> (1) What does the specific work order in effect at the time of injury provide?
> (2) What work did the crew assigned under the work order actually do?
> (3) Was the crew assigned to work aboard a vessel in navigable waters?
> (4) To what extent did the work being done relate to the mission of that vessel?
> (5) What was the principal work of the injured worker? and
> (6) What work was the injured worker actually doing at the time of injury?

Movers contend that the first and second *Davis* factors confirm the maritime nature of the
contract at issue. Movers allege that, as in *Davis*, no specific written work order applicable to the
work being performed on or about the date of the Plaintiff's injury is available. However,
Movers insist that at that time of the accident, Sims was furnishing labor and performing general
maintenance and repair work on offshore oil and gas wells in the East Bay Field. (Movers' Ex.
A, pg. 111, ln. 22 - pg. 112, ln. 17).

In examining the third *Davis* factor, Movers contend that the Sims crew was assigned to
work aboard the lift vessel. (Movers' Ex. F,G). Movers offer Plaintiff's deposition testimony
that all of Sims' work in the East Bay Field was staged and performed from the lift boat in
support. (Movers' Ex. A, pg. 119, lns. 14-24; pg. 120, lns. 5-8 ).

Additionally, the fourth *Davis* factor strongly supports the conclusion that the Energy
Partners/Sims contract is maritime in nature. Movers allege that the mission of the vessel, the
*L/B GARY DEAN ELEVATOR*, was to support Sims maintenance and repair operations in the
East Bay Field. Sims' work required that the vessel transport the crew, equipment, and materials
to work sites throughout the field, a task integral to completing the repairs. However, Movers

contend that the mission of the *L/B GARY DEAN ELEVATOR* required that this vessel contribute much more than marine transportation. As in *Davis,* "the particular nature of the terrain and production equipment involved required a special purpose vessel like the [*L/B GARY DEAN ELEVATOR* ] that could function as a mobile work platform." *Davis, 919 F.2d at 317 (5th Cir. 1990).*

Similarly, Movers allege that the Fifth and Sixth *Davis* factors also support the conclusion that the contract at issue is maritime. Movers insist that the Plaintiff's principal work was that of a welder in the accomplishment of the mission of the *L/B GARY DEAN ELEVATOR.* (Movers' Ex. A, pg. 119, ln. 14 - pg. 120, ln. 8). Plaintiff's first and only job assignment from the time he began his employment with Sims in February, 2005 was to the offshore maintenance and repair crew working in the East Bay Field. (Movers' Ex. A, pg. 111, ln. 15 - pg. 112, ln. 15). The actual work performed was inherently vessel-related. Movers contend that Williams testified that approximately ninety percent (90%) of his work for Sims in the East Bay Field was performed on the deck of the lift boat. (Movers' Ex. A, pg. 217, lns. 12-19). Movers insist that Plaintiff was, in effect, a Jones Act seaman. Moreover, at the time of this incident, Movers urge that  Williams was working from the *L/B GARY DEAN ELEVATOR,* engaged in his principal activity and assisting his fellow Sims welder in completing a well jacket repair.

**C.    Cross-Claim Defendant's Contentions (Sims)**

Sims contends that the Master Service Agreement between Sims and Energy Partners is not maritime in nature. Therefore, Sims insists that the Louisiana Oilfield Indemnity Act *(La. R.S. 9:2780 - LOIA)* invalidates the obligation for Sims to indemnify EPL for its negligence. Sims insists that EPL's motion should be denied, and the cross-claim dismissed. Sims argues

that the MSC was a contract for Sims to provide welders and other labor for the repair of oilfield structures permanently affixed to the seabed. Sims insists that it did not provide for or contemplate the use of a vessel in connection with the work and that the use of lift boats was wholly incidental to the work it was hired to do for EPL.

Sims alleges that applying the test set forth in *Davis* confirms that the MSA is non-maritime. Regarding the first factor, Sims contends that no actual work order exists. Sims alleges, however, that its workers were not assigned to the lift boats and performed no work for the lift boats and had no responsibilities on the lift boat. (Ex. C, pgs. 50, 260-61). Therefore, Sims contends that the work order could not have addressed any work in furtherance of the mission of the lift boat. Sims maintains that the work EPL instructed Sims to perform was the repair and maintenance of fixed structures.

Regarding the second factor, Sims argues that its workers were in the East Bay Field for only one purpose – upgrading fixed structures. Sims insists that there is no evidence, anywhere, suggesting that they were hired to repair or maintain a vessel.

Regarding the third factor, Sims contends that its workers were not assigned to work aboard a vessel, and any work aboard the vessel was completely incidental to their mission of upgrading the fixed structures. (Ex. C, pgs. 50, 260-61).

Under the fourth factor, the court considers to what extent the work being done related to the mission of that vessel: Sims contends that, just as in the *Wagner* decision, the applicable contract herein "did not specifically require nor specifically address the supply and use of a vessel for performance of the welding services." *Wagner v. McDermott, Inc. 899 F. Supp. 1551, 1555 (W.D. La. 1994), aff'd, 79 F. 3d 20 (5th Cir. 1996).* Also, as in *Wagner*, "no specific

-4-

mention of the use of the vessel where the alleged accident occurred was made in" the EPL/Sims MSA. *Id at 1555.*

The fifth factor evaluates the principal work of the injured worker. Sims contends that the plaintiff's principal work was as a welder, performing welding to upgrade fixed structures pursuant to regulations of the Minerals Management Service.

Finally, the sixth factor examines the work that the injured worker was actually doing at the time of injury. Sims alleges that this factor overwhelmingly requires the determination that the contract is non-maritime, as it is undisputed that the plaintiff was welding on a fixed platform at the time of his injury.

**D.    3rd Party Defendant's Contentions (Alea)**

Alea contends that Plaintiff's alleged injuries and the accident which allegedly caused them, took place on a fixed platform (well jacket) in federal waters. Alea insists that these facts alone, as well as others, trigger the application of the Outer Continental Shelf Lands Act and Louisiana state law, as surrogate federal law, as the rule(s) of decision in this case. Alea insists that under the Louisiana Oilfield Indemnity Act ("LOIA"), the purported indemnification and insurance procurement obligations flowing from Sims to EPL under the Master Service Contract are void ab initio. *La. R.S. 9:2780.* Thus, Alea contends that EPL's Motion for Summary Judgment should be denied by the Court on this basis alone.

Furthermore, Alea insists that no coverage exists under the Alea Certificate for Plaintiff's alleged injuries by virtue of the application of LOIA to void the indemnity and insurance requirements of the Master Service Contract, and also by virtue of the Workers' Compensation, Employers Liability (and, according to EPL's contentions, the watercraft liability) exclusions of

-5-

Alea's certificate.  Therefore, Alea contends that EPL is not entitled to judgment as a matter of law on the coverage issue, and its subject Motion, as against Alea, must be denied for this reason.

**E.     Analysis**

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted to the Court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P. 56*. Unsubstantiated assertions, improbable inferences and unsupported speculation are not sufficient to defeat a motion for summary judgment.  *Brown v. City of Houston, 337 F. 3d 539, 541 (5th Cir. 2003).*

The basic issue before the Court is whether maritime law or Louisiana law applies to the Master Service Agreement between EPL and Sims.  Based on the facts of this case along with a review of the *Davis* factors, this Court finds that the contract in question is not maritime in nature and summary judgment should be denied.  More specifically, this Court finds that genuine issues of material fact exist regarding issues number one, two and three.

The first *Davis* factor asks what does the specific work order in effect at the time of injury provide, and the second *Davis* factor asks what work did the crew assigned under the work order actually do?  In this case, both Movers and Sims state that no work order exists.  Without a work order, this Court cannot guess the specific duties assigned to Plaintiff on the day of the accident. However, this Court is able to determine what Plaintiff was **not** assigned to do on the day of the accident.  In Brad Buras's deposition, he answered that none of the Sims' employees did any work to any of the crew boats or lift boats. (Def. Ex. C, p. 50, 260-61).  Mr. Buras further answered that both of those boats (i.e., crew boats and lift boats) had their own crews. *Id.*

Therefore, since the evidence shows that Sims workers had no responsibilities on the lift boat (i.e., the *L/B GARY DEAN ELEVATOR*), the work order could not have addressed any work in furtherance of the mission of the lift boat.

The third *Davis* factor asks whether the crew was assigned to work aboard a vessel in navigable waters? Plaintiff offers some evidence as to show that Sims workers were assigned to work aboard a vessel in navigable waters. For example, the Plaintiff testified that all of Sims' work in the East Bay Field was staged and performed from the lift boat. (Def. Ex. A, pg. 119, lns. 14-24, pg. 120, lns. 5-8). However, Plaintiff does not offer concrete evidence that Plaintiff was actually assigned to the *L/B Gary Dean Elevator*. EPL suggests that the Plaintiff was assigned to the lift boat, but this suggestion is belied by the facts and the Plaintiff's own testimony. In fact, the Plaintiff testified in his deposition that on the day of his accident, he began the day working not off a lift boat, but off a crew boat. (Def. Ex. B, pg. 138).

Furthermore, Mover points to *Davis* to show that the contract is maritime in nature. However, the facts of this case are different than the facts in *Davis*. In *Davis*, the injured worker actually performed work directly for the barge. In this case, according to the deposition of Brad Buras, the Sims workers did not do any type of work to directly benefit the lift boat. (Def. Ex. C, p. 50, 260-61). Also, in *Davis*, the injured worker was actually assigned to work as a pusher aboard the barge in question. In this case and based on the evidence, Plaintiff was not regularly involved in work directly for the vessel. Rather, Plaintiff was employed as a welder for Sims at the time of the accident. (Sims Ex. B, pg. 111,118). At the time of the accident, Sims was performing repair and maintenance work for EPL, working on grating and hand railings. (Sims Ex. B, pg. 117; Ex. C, pg. 36). All the work Sims did was for satellite platforms, or "jackets,"

-7-

permanently affixed to the Gulf of Mexico. (Sims Ex. B, pg. 119). Most importantly, however, is the fact that the accident occurred, and the Plaintiff was injured, on a "jacket" (i.e., fixed platform) and not on the L/B Gary Dean Elevator. (Sims Ex. C, pg. 148).

Based on the facts presented, this Court finds that the Master Service Agreement between Sims and Energy Partners is NOT maritime in nature. Therefore, Movers' Motion for Summary Judgment (Doc. 43) is hereby **DENIED**.

F.    **Conclusion**

For the reasons set forth above, it is hereby Ordered, Adjudged and Decreed that Movers' Motion for Summary Judgment (Doc. 43) is hereby **DENIED**.

THUS DONE AND SIGNED in Lafayette, Louisiana, on this the _____ day of _____, 2008.

CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

-8-