
RECEIVED
USDC WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 1-2-08

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH B. WILLIAMS, JR. | * | CIVIL ACTION NO. 6:06-cv-1982 |
| VERSUS | * | JUDGE RICHARD T. HAIK, SR. |
| SIMS INDUSTRIES, LLC, ELEVATING BOATS, LLC, AND EPL OF LOUISIANA, LLC | * | MAGISTRATE JUDGE HILL |

## REASONS FOR JUDGMENT

Joseph B. Williams, Jr. (hereinafter referred to as "Plaintiff") filed an action under the Jones Act for damages associated with injuries sustained while in the course of his employment with Sims Industries, LLC (hereinafter referred to as "Sims"), one of the defendants named herein. Sims filed the instant Motion for Summary Judgment on the basis that there is no genuine issue of material fact with respect to plaintiff's status as a seaman under the Jones Act and that as a matter of law plaintiff could not recover against Sims under the Jones Act. Plaintiff opposed the motion insisting that he qualifies as a Jones Act seaman for the purposes of recovering against Sims.

## FACTUAL BACKGROUND

On the day of the accident, plaintiff was working in the East Bay Field, drifting from platform to platform performing his usual job duties as a welder for Sims. Plaintiff was ordered to board Well Jacket No. 52 located in Block 343 in the East Bay Field from the L/B Gary Dean Elevator and was injured while assisting with raising a battery box from the deck grating to one of the jacket legs. Plaintiff was holding the battery box in place while his co-worker welded two L-brackets supporting the battery box to the jacket leg. While in the process of holding the battery box in place, the battery exploded, injuring plaintiff.

The following are undisputed facts surrounding plaintiff's employment with Sims that are pertinent to this matter:

1. Plaintiff was employed as a welder by Sims and was performing maintenance and repairs to offshore oil and gas wells in the East Bay Field pursuant to a Master Service Contract between Sims and Energy Partners, Ltd. (hereinafter referred to as "Energy Partners") at the time of the injury.

2. The maintenance and repair work done by Sims in the East Bay Field included the fabrication, repair, removal and installation of flow lines as well as other pipe, handrails, valves, plugs, ladders, grating and related parts, components and equipment.

3. All of plaintiff's duties related to maintenance and repair of Energy Partners' fixed satellite platforms in the East Bay Field.

4. Plaintiff worked exclusively in the East Bay Field during his employment with Sims.

5. Plaintiff, along with other Sims employees, was transported by special purpose lift vessels, provided by Elevating Boats, L.L.C. (hereinafter referred to as "Elevating Boats") pursuant to a contract with Energy Partners, to and from the various platforms owned by Energy Partners located in the East Bay Field.

6. These lift boats were used to transport the maintenance equipment, supplies and materials that Sims' crews used to perform their work.

7. The lift boats were also used to provide the Sims' crew with work space.

8. Plaintiff performed approximately ninety percent of his work for Sims in the East Bay Field on the decks of these lift boats.

9. Sims does not own or operate any vessels and plaintiff was never assigned to any vessel or vessels under the common ownership or control of his employer, Sims.

10. Plaintiff was not assigned to any particular vessel in the East Bay Field but the L/B Gary Dean Elevator was one of the lift boats regularly used to transport the Sims employees to and from the different platforms.

(PROCEDURAL BACKGROUND)

## **LAW AND ANALYSIS**

Defendant bases the instant Motion for Summary Judgment on the argument that plaintiff did not have a substantial connection either to a single vessel in navigation or to an identifiable fleet of vessels under the common ownership or control of his employer and, further, that his work did not contribute to the function or mission of any of the vessels on which he worked. As such, Sims argues, plaintiff does not qualify for "seaman" status and is not entitled to recover against Sims under the Jones Act.

Plaintiff opposed the Motion for Summary Judgment contending it is not required that plaintiff's employer own or control the vessel or fleet of vessels. Further, plaintiff argues that it is not necessary for a seaman to aid in navigation or contribute to transportation of the vessel if he is doing the ship's work and that the ship's work is not as limited as suggested by Sims.

Summary Judgment is proper when there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Federal Rules of Civil Procedure 56(c). The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant. *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F. 3d 460 (5th Cir. 2005). Nonmovant need only present evidence from which a jury might return a verdict in his favor, in order to survive a summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). As evidenced by the above recitation of the facts and the position memoranda submitted by both parties, in this case, there is no dispute as to any material fact concerning plaintiff's

employment with Sims such that any reasonable minds could differ as to plaintiff's "seaman" status with respect to recovery against his employer, Sims, under the Jones Act. Thus, there is nothing that could preclude this court from deciding this issue as a matter of law.

The Supreme Court has established a two-prong test for determining whether an individual worker is a "seaman," and therefore entitled to the protections of the Jones Act. First, "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Chandris, Inc. v. Latsis*, 515 US 347 (1995). Second, "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both duration and nature." *Id.*

### *Work that contributes to the mission and function of a vessel*

The Supreme Court, in *McDermott International, Inc. v. Wilander*, held that "the key to seaman status is employment-related connection to a vessel in navigation." *McDermott International, Inc. v. Wilander*, 498 U.S. 337, 355 (1991) The court further explained that "a necessary element of the connection is that a seaman perform the work of a vessel" and that it is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing *the ship's work.*" *Id.* (*Emphasis added*) However, the Court declined to either apply this standard to the facts of that particular case or further elaborate on what constitutes "the ship's work."

The Fifth Circuit, in *Hufnagel v. Omega Service Industries, Inc.*, found that a rigger who had been assigned to repair pilings at the time of his injury was not a seaman because, among other things, his "duties as a platform worker in no way contributed to 'doing the ship's work.'" *Hufnagel v. Omega Service Industries, Inc.*, 182 F. 3d 340, 347 (5 Cir. 1995) In that case, the

extent of plaintiff's employment duties consisted only of platform work and nothing as a member of the crew of the jack-up. Further, the Court pointed out that plaintiff's "sole purpose for being present on the platform or the [jack-up] related to the repair of the platform" and that his purpose contrasted with the jack-up's purpose, which was to "support the repair crew by providing lodging quarters and a work area." *Id* at 347.

Later, in *Becker v. Tidewater, Inc.*, the Fifth Circuit noted that "the Supreme Court in *Chandris* admitted that satisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.' *Becker v. Tidewater, Inc.*, 335 F.3d 376, 387-388 (5 Cir. 2003) This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'"*Id.* However, this court does not believe the Fifth Circuit intended the phrase to be construed so broadly as to encompass plaintiffs, such as the one in this case, who are present on the ship solely for the purposes of servicing a platform.

In this case, plaintiff was employed as a welder by Sims and was assigned to the East Bay Field pursuant to a master service contract with Energy Partners. At no point was plaintiff assigned to any particular vessel and, from the facts contained in the record, there is no evidence to suggest that he spent a disproportionate amount of time on the L/B Gary Dean. Thus, there is nothing in the record to support the contention that plaintiff was a member of the crew of the L/B Gary Dean. The mere fact that plaintiff used the work area provided on the L/B Gary Dean and the other lift boats to complete his duties does not transform his work for the platform into that of the ship's work. Rather, the work done by plaintiff was in furtherance of and contributed to the mission and function of the platforms in the East Bay Field. This court adopts the reasoning in

*Hufnagel* in this respect.[1]

Plaintiff's sole purpose for being on the L/B Gary Dean was for the purposes of doing maintenance and repair work to Energy Partner's platforms in the East Bay Field. By contrast, the L/B Gary Dean was present solely to provide support for repair crews in the East Bay Field. The amount of time spent aboard the L/B Gary Dean and the other liftboats in the area is of no consequence in determining whether plaintiff was "doing the ship's work." Likewise, minor duties, such as loading and unloading equipment, that plaintiff may have performed aboard the L/B Gary Dean do not transform him into a "crew member." This is especially true considering he was not taking part in such activities at the time of the accident.

### *Employer ownership or control of a group of vessels*

The Fifth Circuit, as held in *Roberts v. Cardinal Services, Inc.*, has expressly provided that when a group of vessels is at issue, a worker who aspires to "seaman" status must show that at least 30% of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control. *Roberts v. Cardinal Services, Inc.*, 266 F. 3d 368 (5 Cir. 2001); *see also Willis v. Fugro Chance, Inc.*, 278 Fed.Appx. 443 (5 Cir. 2008)

In this case, plaintiff's employer, Sims, did not own or control any of the vessels involved in plaintiff's work in the East Bay Field. This fact is not in dispute. Further, it is undisputed that plaintiff was not permanently assigned to any one vessel in navigation and that he worked aboard several liftboats used in the jobs performed by Sims pursuant to the master service contract with Energy Partners.

Plaintiff argues that the decisions in *Roberts* and *Willis* should not be interpreted so as to

---

[1] Hufnagel v. Omega Services, 182 F. 3d 340, 347 (5 Cir. 1999)

require that an employer own or control the vessels involved in a plaintiff's offshore work in order for the employee to be able to recover under the Jones Act against his employer. Plaintiff asserts that the focus is on whether there was no common ownership or control of the vessels in question, rather than whether the employer owned or controlled the vessel(s) in question.

However, this court's reading of the *Roberts* and *Willis* cases, as well as the cases cited in Plaintiff's brief and the prevailing jurisprudence of the Fifth Circuit, reveals the Fifth Circuit's intent to require that thirty percent (30%) of an employee's work be done on a vessel, or group of vessels, owned or controlled by the employer in order to recover against that particular employer under the Jones Act.

The Court in *Roberts* held that time spent by an employee of an offshore oil platform servicing company on platforms with adjacent vessels not owned by the employer-company did not count toward the employee's "connection to identifiable group of vessels," for the purposes of attaining "seaman" status under the Jones Act. *Roberts v. Cardinal Services, Inc.*, 266 F. 3d 368 (5 Cir. 2001) Instead, only platform time with employer-company vessels alongside, or time on company vessels counted. In that case, plaintiff was employed as a "plugging and abandonment" worker who was injured by the accidental firing of a perforation gun. The court noted:

> "when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control."
> *Id* at 377.

In *Willis*, the Court held that a substantial connection did not exist between the employee and a vessel or group of vessels where the employer did not own or exercise control over any vessel upon which employee had worked. *Willis v. Fugro Chance, Inc.*, 278 Fed.Appx. 443 (5

Cir. 2008) In that case, plaintiff was employed as a survey party chief and was exposed to mercury and other toxic chemicals while aboard a submersible offshore drilling rig leased by, as well as owned and "crewed" by companies other than plaintiff's actual employer. The court clearly states in its conclusion:

> "[h]ere, the record reveals that Willis's employer, Fugro Chance, neither owned nor exercised control over any of the vessels upon which Willis worked,...Willis does not qualify as a seaman."

*Id* at 447.

To adopt plaintiff's argument would be to effectively hold that an employee is able to recover from his employer as a Jones Act seaman so long as he worked on or from a vessel, or fleet of vessels which are commonly owned or controlled, irregardless of whether the employer owned, controlled or even contracted for the vessel(s) in question. Under such precedent, it would follow, then, that the employee of a land-based service company which enters into longer-term master-service contracts with fewer customers has a better chance of recovering from his employer under the Jones Act than the same type of employee whose company happens to enter into shorter-term master-service contracts with multiple customers over the same period of time This would result despite the fact that both employees may be doing the same work and have no more a degree of permanency to any of the vessel(s) in question.

## CONCLUSION

For all of the above and foregoing reasons, plaintiff does not qualify for "seaman" status for the purposes of recovering against his employer, Sims, under the Jones Act.

As the issue of whether plaintiff qualifies as a Jones Act "seaman" for the purposes of plaintiff's recovery against other defendants is not before the court at this time, we pretermit any

discussion thereof and limit this judgment only to deny plaintiff's recovery against Sims Industries, LLC, under the Jones Act.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Motion for Summary Judgment [Court Doc. #73] is **GRANTED**.

THUS DONE AND SIGNED on this the ___19th___ day of ___November___, 2008.

*[signature]*
CHIEF JUDGE RICHARD T. HAIK, SR.
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA